# EXHIBIT A

## (Part 1)

*State Court Complaint and Amended Complaint*

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT COURT IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.

BRYAN SCOTT,

     Plaintiff,

v.

COX BROADCASTING CORP.,
doing business as WFTV
CHANNEL 9 ORLANDO

     Defendant.

_____/

### PLAINTIFF BRYAN SCOTT'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Bryan Scott (hereafter "Scott" or "Plaintiff"), through his undersigned counsel and pursuant to Fla.R.Civ.P. 1.100 and 1.110, files this Complaint and Demand for Jury Trial against Defendant, Cox Broadcasting Corp., doing business as WFTV Channel 9 ("WFTV" or "Defendant") and alleges the following:

### NATURE OF ACTION

1.     Scott brings this action against Defendant for denying him employee benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and for retaliation pursuant to ERISA and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction because Scott is seeking damages of more than $30,000 for acts and omissions that occurred in Orange County, Florida, and because Defendant's place of business, where Plaintiff was employed, is located in Orange County, Florida.

3.     Venue is proper because Plaintiff at all times relevant to this claim worked for Defendant in Orange County, Florida, and all of the relevant events occurred in Orange County, Florida.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

4.     Scott has complied with any and all procedural requirements necessary for bringing this lawsuit.

## PARTIES

5.     Scott has been employed by WFTV since November 4, 2009.

6.     WFTV is an affiliate of Cox Broadcasting, Inc., a television news station that provides local and national news to the Orlando area.

## FACTUAL ALLEGATIONS

7.     Scott was hired by Defendant as a photographer/producer in Creative Services at WFTV.

8.     Scott worked for Defendant in Retail Services and then Studio Operations in 2010.

9.     In November of 2010, WFTV increased Scott's hours from part time to full time. In November of 2011, Scott was notified that he had worked a sufficient number of hours to be eligible for health insurance benefits.

10.     Scott at that time was a full-time employee working in the operations area of WFTV.

11.     Defendant provided medical and dental insurance and other benefits for employees through Cox Enterprises, Inc. Welfare Benefit Plan ("Benefit Plan"), pursuant to ERISA.

12.     As a full-time employee, Scott was eligible for, and did receive, a variety of employee benefits through Defendant's Benefit Plan.

13.     Employers are required to provide certain health care benefits to full-time employees under the Patient Protection Affordable Care Act, often called the Affordable Care Act ("ACA").

14.     Under the ACA, employees are considered full-time if they work more than 30 hours per week or 130 hours per month.

15.     Thus, the ACA requires employers to provide employment benefits to all employees who work more than 30 hours per week or 130 hours per month.

16.     WFTV misclassified Scott in May of 2016 and began to reduce his hours in July of 2016.  Scott had been working approximately 42 hours per week at that time.

17.     WFTV reduced Scott's hours for the sole or primary purpose of denying or disqualifying him from benefits which he was entitled to receive under the ACA, in order to cut costs.

18.     The motive is exposed in an e-mail issued by WFTV management in May of 2016 directing that the hours of certain employees be restricted in order to avoid providing health care benefits under the ACA.

19.     WFTV carried out this scheme to reduce Scott's benefits by directing Scott to change his method of reporting his time worked so that certain hours would not be counted toward full-time eligibility for health care benefits.

20.     Scott was asked to list certain hours worked under Creative Services instead of under Operations. The hours listed under Creative Services would not be counted toward eligibility for health care services.

21.     Certain workers, including some in Creative Services, were normally paid as contractors, rather than as employees, and therefore, were not eligible for benefits. Their wages were called talent fees.

22.     Scott was directed by Community Affairs Director Michelle Stevens to submit his time directly to her, so she could ensure that hours classified as talent fees were not included on Scott's regular time sheet.

23.     Scott at that time objected to submitting his hours as talent fees and excluding them from his benefits eligibility hours. He argued that was a violation of WFTV's collective bargaining agreement as well as overtime laws, since he was not an independent contractor.

24.     In order to avoid the ACA and in retaliation for his complaints, Scott was demoted from Producer Local Market to the position of Studio Technician on July 31, 2016, with an accompanying reduction in pay.

25.     Scott was demoted to Studio Technician in July of 2016. The purpose of the demotion was to disqualify Scott from receiving employee health care benefits.

26.     As of September 2016, however, Scott was still classified by the payroll department as a full-time employee entitled to health care benefits.

27.     Nevertheless, from May 26, 2016 through June 28, 2017, Scott's hours were reduced by approximately seventeen hours per week.

28.     As a result of the demotion, Scott's work week was eventually reduced from forty (40) hours to ten (10) hours.

29.     Scott filed another complaint with the corporate Ethics Office in December of 2016.

30.     Scott also complained to the Department of Labor, Wage and Hour Division. Immediately, he was retaliated against by Defendant, which assigned Scott to less prestigious tasks and removed him from the evening news.

31.     Scott's hours continued to be reduced until he was working twelve (12), and then only ten (10) hours per week.

32.     The reduction in hours increased as Scott continued to complain about his demotion and decreased hours.

33.     The reason for Scott's change of status was disclosed by Terry Sharpe in an interoffice email issued in September 2016 and discovered later, where he admitted that it was due to the requirements of the ACA.

34.     Scott complained to Bianca Rochester, Cox's Ethics and Compliance Analyst, on January 3, 2017 about being forced to designate part of his hours as an independent contractor. Scott had been performing those same duties as an employee for years.  However, now Defendant wanted to classify the work as contracted simply to avoid recording those hours on timesheets that would be counted to determine eligibility for health care.

35.     Scott complained that the practice violated wage-and-hour laws.

36.     Scott complained to Rochester that his hours were reduced after he made a complaint to Defendant's Ethics Office.

37.     Scott complaint to Defendant's Ethics Officer again in another e-mail dated January 9, 2017.

38.     Scott complained again to Rochester in an e-mail on February 22, 2017 about the designation of part of his hours as talent fees to avoid paying overtime.

39.     Scott was notified by Defendant in October of 2017 that he was no longer eligible for health care benefits due to the accompanying reduction in hours.

40.     WFTV reduced Scott's hours by removing from his time sheet hours actually worked and paying part of his salary as a talent fee.

41.     By classifying Scott as an independent contractor for some his hours, WFTV removed those hours from Scott's time sheet, and therefore, did not count them toward his eligibility for health care.

42.     Scott complained that talent fees were being used as a tool to deny him benefits and to interfere with his eligibility for benefits.

43.     Talent fees were paid to workers classified as independent contractors rather than as employees.  Therefore, the hours designated as talent fees did not count toward health care benefits.

44.     Talent fees were paid on an independent contractor basis to high-level station positions such as anchors, television personalities, editors and chief engineers.

45.     Four days after Scott complained about payroll violations, he was demoted from Producer to Studio Technician.

46.     Scott continued to refuse to report his hours as talent fees.

47.     Scott repeatedly requested that Defendant reassign him to a position that would not misclassify him as a contractor and would not separate talent fees from hours worked that counted toward overtime and benefits.

48.     Scott was told, however, if he did not accept his status as a contractor, his pay would be reduced 25 percent.

49.     Scott's classification was changed to avoid paying him for hours worked that would count toward his eligibility for health insurance, and to avoid paying him overtime in the event he worked more than 40 hours in a pay period.

50.     The television news station misclassified Scott to make him ineligible for overtime as well as for health care benefits.

51.     Scott filed a complaint with the corporate ethics department of WFTV, and later with the U.S. Department of Labor ("DOL") in February of 2017.

52.     The DOL conducted an investigation and found in July of 2017 that Scott was misclassified as a part-time employee and was denied overtime as required by the Fair Labor Standards Act.

53.     As a direct result of Scott's wage complaints, WFTV reduced his hours even further and demoted him.

54.     Scott raised the issue again on September 22, 2017 to Mary Robert, Group VP Human Resources, who told him falsely that he had "always" been classified "as a part-time employee."

55.     However, as late as September 28, 2016, Payroll Specialist Terry Sharpe informed Scott that he was considered a "full-time employee with no restrictions."

56.     In October of 2017, Scott was told that his benefits would not be renewed because he lacked the working hours to be eligible as a full-time employee. He was told he did not work enough hours (1,560) the year prior (October 3, 2016 to October 2, 2017) to qualify for the Cox Medical [Insurance] Plan.

57.     Scott's merit-based raise was reduced 50 percent on March 26, 2017 following his wage and benefits complaints.

58.     The retaliation culminated when WFTV followed through with its threat and denied Scott his benefits on January 1, 2018.

59.     As a result of the unlawful actions by Defendant, Scott was denied benefits, including health care benefits, lost income, and was forced to incur attorney's fees to vindicate his rights.

## COUNT I
### Denial of Benefits
### ERISA, 29 U.S.C. § 1140

60.     Plaintiff re-alleges and incorporates by reference into Count I paragraphs 1 through 59 of this Complaint.

61.     Defendant sponsored an employee benefit plan for its employees that covered Scott during his employment with Defendant.

62.     The plan was Cox Enterprises, Inc. Welfare Benefit Plan that was issued pursuant to the requirements of ERISA.

63.     The plan was provided by Defendant to provide employee benefits, including but not limited to medical and dental coverage and life insurance.

64.     Scott, who was a beneficiary under the plan, is bringing this action to recover benefits that are due him under the terms of the plan and to clarify his rights for future benefits he is entitled to receive under the plan.

65.     Scott is also seeking to enjoin any similar violations from occurring in the future and to redress the violations that have occurred in the past and which are continuing to occur.

66.     Employers are prohibited from intentionally taking actions that might abridge or impair an employee's ability to collect ERISA benefits.

67.     The ACA requires employers with 50 or more full-time employees to provide health care to all full-time employees.

68.     Full-time employees under the ACA are employees who work 30 or more hours per week.

69.     WFTV intentionally reduced Scott's hours to less than 30 per week to make him ineligible for health care benefits and to deny him health care benefits.

70.     WFTV intentionally and deliberately misclassified Scott in order to deny him wages and health insurance benefits.

71.     After reducing his hours, WFTV took away Scott's benefits, including health insurance, in January of 2018.

72.     ERISA makes it "unlawful for any person" to discriminate against a participant or beneficiary for exercising any right provided by ERISA or for the purpose of interfering with the attainment of any right the participant may be entitled to under the employer's benefit plan.

73.     Defendant intentionally curtailed Scott's hours to discriminate against him "for the purpose of interfering with the attainment" of his right to employee benefits.

74.     Defendant was concerned about the cost of providing health care coverage, and attempted to decrease costs by reducing employees' hours so they would no longer be eligible for employee benefits, and by classifying employee hours as contracted work which was not counted toward eligibility for health care benefits.

75.     Thus, Defendant acted with an unlawful purpose when it took adverse actions affecting Scott's work status.

76.     Defendant specifically intended to interfere with Scott's benefits when it reduced his hours and directed him to report certain hours as "talent fees" instead of hours worked.

77.     Defendant demoted Scott for the purpose of depriving him of continued participation in the company-provided group health care plan.

78.     As a result of Defendant's actions, Scott has lost wages, including overtime, that he would have earned if he had not been demoted unlawfully to avoid the requirements of the ACA.

79.     Plaintiff also has been forced to pay the cost of health care and other benefits out of his own pocket as a result of the loss of medical, dental and other benefits coverage.

### DEMAND FOR RELIEF

WHEREFORE, Scott respectfully asks this Court to award him damages for the following:

(i)     lost wages that resulted from his demotion intended to deny him health care benefits;

(ii)    the cost of obtaining the entitled benefits out-of pocket;

(iii)   lost overtime that resulted from the demotion;

(iv)    reinstatement to a full-time position;

(v)     reinstatement of all employee benefits;

(vi)    interest; and

(vii)   any other relief the Court deems proper.

### COUNT II
### Retaliation
### ERISA, 29 U.S.C. § 1140

80.     Plaintiff re-alleges and incorporates by reference into Count II all allegations made in paragraphs 1 through 79 of this Complaint.

81.     ERISA prohibits employers from discriminating against employee beneficiaries to its health care plan for exercising or attempting to exercise their rights under ERISA.

82.     Plaintiff was a beneficiary of Defendant's ERISA benefits plan, and therefore, is protected against retaliation for exercising his rights in regard to ERISA employment benefits.

83.     Plaintiff engaged in protected activity under ERISA in that he attempted to exercise his rights to employment benefits which he was entitled to receive.

84.     As a result of engaging in protected activity, Scott suffered an adverse employment action in the form of a demotion or loss of pay.

85.     Plaintiff also suffered an adverse employment action in that he was discriminated against for exercising his rights under ERISA. The purpose of the discriminatory acts was to retaliate against Plaintiff for the exercise of his rights under ERISA and to interfere with the attainment of such rights.

86.     The adverse employment action was directly connected to the protected activity, i.e., Plaintiff's attempt to exercise his rights under ERISA.

87.     Defendant engaged in improper efforts to interfere with Plaintiff's ERISA benefits, and Defendant did in fact actually interfere with Plaintiff's receipt of such benefits.

88.     As a result of the unlawful actions by Defendant, Scott suffered a loss of benefits and a loss of income that resulted from the retaliatory acts by Defendant.

89.     Scott also was forced to incur attorney's fees to vindicate his rights and to pay the cost of his employee benefits out of his own funds.

## **DEMAND FOR RELIEF**

WHEREFORE, Scott respectfully asks this Court to award him damages for the following:

(i)     lost wages that resulted from the discrimination that occurred from the denial of health care benefits which Scott was entitled to receive;

(ii)     the cost of obtaining the benefits out of pocket;

(iii)    lost overtime that resulted from the reduction in hours intended to deny Scott employment benefits;

(iv)    reinstatement to a full-time position;

(v)    reinstatement of all employment benefits;

(vi)     interest; and

(vii)    any other relief the Court deems proper.

## COUNT III
## Retaliation
## Fair Labor Standards Act, 29 U.S.C. § 215

90.    Plaintiff re-alleges and incorporates by reference into Count II all allegations made in paragraphs 1 through 59 of this Complaint.

91.    The FLSA makes it unlawful to discriminate against any employee for filing a claim seeking unpaid wages. The protection applies whether or not the employee's work was covered by the FLSA.

92.    The FLSA makes it unlawful to demote an employee or reduce his compensation for filing a claim for unpaid wages under the FLSA.

93.    Scott filed a complaint with the Department of Labor on February 3, 2017.

94.    The DOL conducted an investigation and found in July of 2017 that Scott was classified as a part-time employee and was denied overtime as required by the FLSA.

95.    As a direct result of Scott's complaints, WFTV reduced his hours even more and continued to make him work in a part-time capacity as a result of his demotion.

96.    The result of the reduction in hours was that on October 1, 2017, Scott was told he was no longer eligible to enroll in Defendant's health care plan.

97.     WFTV retaliated against Scott for filing a wage claim for unpaid overtime by continuing to reduce his hours and by denying him benefits.

98.     Plaintiff is entitled to liquidated damages under the FLSA because the violation by WFTV was willful.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully asks the Court to award the following damages:

(i)     lost wages as a result of the retaliatory demotion;

(ii)    liquidated damages;

(iii)   emotional and mental distress;

(iv)    interest; and

(v)     any other relief this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for each and every allegation in this Complaint.


Respectfully submitted,


**[s] Alfred Truesdell**
Alfred Truesdell
Florida Bar No. 0885363
Truesdell Law
3521 Tyngsbourgh Drive
DeLand, Florida 32720
(407) 920-7392
truesdelllaw@gmail.com
Attorney for Bryan Scott

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT COURT IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.

BRYAN SCOTT,

      Plaintiff,

v.

COX MEDIA GROUP,
doing business as WFTV
CHANNEL 9 ORLANDO

      Defendant.

_____/

## PLAINTIFF BRYAN SCOTT'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Bryan Scott (hereafter "Scott" or "Plaintiff"), through his undersigned counsel and pursuant to Fla.R.Civ.P. 1.100 and 1.110, files this Amended Complaint and Demand for Jury Trial against Defendant, Cox Media Group, doing business as WFTV Channel 9 ("WFTV" or "Defendant") and alleges the following:

## NATURE OF ACTION

1.     Scott brings this action against Defendant for denying him employee benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and for retaliation pursuant to ERISA and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction because Scott is seeking damages of more than $30,000 for acts and omissions that occurred in Orange County, Florida, and because Defendant's place of business, where Plaintiff was employed, is located in Orange County, Florida.

3.      Venue is proper because Plaintiff at all times relevant to this claim worked for Defendant in Orange County, Florida, and all of the relevant events occurred in Orange County, Florida.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

4.      Scott has complied with any and all procedural requirements necessary for bringing this lawsuit.

## PARTIES

5.      Scott has been employed by WFTV since November 4, 2009.

6.      WFTV is an affiliate of Cox Broadcasting, Inc., a television news station that provides local and national news to the Orlando area.

## FACTUAL ALLEGATIONS

7.      Scott was hired by Defendant as a photographer/producer in Creative Services at WFTV.

8.      Scott worked for Defendant in Retail Services and then Studio Operations in 2010.

9.      In November of 2010, WFTV increased Scott's hours from part time to full time. In November of 2011, Scott was notified that he had worked a sufficient number of hours to be eligible for health insurance benefits.

10.     Scott at that time was a full-time employee working in the operations area of WFTV.

11.     Defendant provided medical and dental insurance and other benefits for employees through Cox Enterprises, Inc. Welfare Benefit Plan ("Benefit Plan"), pursuant to ERISA.

12.     As a full-time employee, Scott was eligible for, and did receive, a variety of employee benefits through Defendant's Benefit Plan.

13.     Employers are required to provide certain health care benefits to full-time employees under the Patient Protection Affordable Care Act, often called the Affordable Care Act ("ACA").

14.     Under the ACA, employees are considered full-time if they work more than 30 hours per week or 130 hours per month.

15.     Thus, the ACA requires employers to provide employment benefits to all employees who work more than 30 hours per week or 130 hours per month.

16.     WFTV misclassified Scott in May of 2016 and began to reduce his hours in July of 2016.  Scott had been working approximately 42 hours per week at that time.

17.     WFTV reduced Scott's hours for the sole or primary purpose of denying or disqualifying him from benefits which he was entitled to receive under the ACA, in order to cut costs.

18.     The motive is exposed in an e-mail issued by WFTV management in May of 2016 directing that the hours of certain employees be restricted in order to avoid providing health care benefits under the ACA.

19.     WFTV carried out this scheme to reduce Scott's benefits by directing Scott to change his method of reporting his time worked so that certain hours would not be counted toward full-time eligibility for health care benefits.

20.     Scott was asked to list certain hours worked under Creative Services instead of under Operations. The hours listed under Creative Services would not be counted toward eligibility for health care services.

21.     Certain workers, including some in Creative Services, were normally paid as contractors, rather than as employees, and therefore, were not eligible for benefits. Their wages were called talent fees.

22.     Scott was directed by Community Affairs Director Michelle Stevens to submit his time directly to her, so she could ensure that hours classified as talent fees were not included on Scott's regular time sheet.

23.     Scott at that time objected to submitting his hours as talent fees and excluding them from his benefits eligibility hours. He argued that was a violation of WFTV's collective bargaining agreement as well as overtime laws, since he was not an independent contractor.

24.     In order to avoid the ACA and in retaliation for his complaints, Scott was demoted from Producer Local Market to the position of Studio Technician on July 31, 2016, with an accompanying reduction in pay.

25.     Scott was demoted to Studio Technician in July of 2016. The purpose of the demotion was to disqualify Scott from receiving employee health care benefits.

26.     As of September 2016, however, Scott was still classified by the payroll department as a full-time employee entitled to health care benefits.

27.     Nevertheless, from May 26, 2016 through June 28, 2017, Scott's hours were reduced by approximately seventeen hours per week.

28.     As a result of the demotion, Scott's work week was eventually reduced from forty (40) hours to ten (10) hours.

29.     Scott filed another complaint with the corporate Ethics Office in December of 2016.

30.     Scott also complained to the Department of Labor, Wage and Hour Division. Immediately, he was retaliated against by Defendant, which assigned Scott to less prestigious tasks and removed him from the evening news.

31.     Scott's hours continued to be reduced until he was working twelve (12), and then only ten (10) hours per week.

32.     The reduction in hours increased as Scott continued to complain about his demotion and decreased hours.

33.     The reason for Scott's change of status was disclosed by Terry Sharpe in an interoffice email issued in September 2016 and discovered later, where he admitted that it was due to the requirements of the ACA.

34.     Scott complained to Bianca Rochester, Cox's Ethics and Compliance Analyst, on January 3, 2017 about being forced to designate part of his hours as an independent contractor. Scott had been performing those same duties as an employee for years.  However, now Defendant wanted to classify the work as contracted simply to avoid recording those hours on timesheets that would be counted to determine eligibility for health care.

35.     Scott complained that the practice violated wage-and-hour laws.

36.     Scott complained to Rochester that his hours were reduced after he made a complaint to Defendant's Ethics Office.

37.     Scott complaint to Defendant's Ethics Officer again in another e-mail dated January 9, 2017.

38.     Scott complained again to Rochester in an e-mail on February 22, 2017 about the designation of part of his hours as talent fees to avoid paying overtime.

39.     Scott was notified by Defendant in October of 2017 that he was no longer eligible for health care benefits due to the accompanying reduction in hours.

40.     WFTV reduced Scott's hours by removing from his time sheet hours actually worked and paying part of his salary as a talent fee.

41.     By classifying Scott as an independent contractor for some his hours, WFTV removed those hours from Scott's time sheet, and therefore, did not count them toward his eligibility for health care.

42.     Scott complained that talent fees were being used as a tool to deny him benefits and to interfere with his eligibility for benefits.

43.     Talent fees were paid to workers classified as independent contractors rather than as employees.  Therefore, the hours designated as talent fees did not count toward health care benefits.

44.     Talent fees were paid on an independent contractor basis to high-level station positions such as anchors, television personalities, editors and chief engineers.

45.     Four days after Scott complained about payroll violations, he was demoted from Producer to Studio Technician.

46.     Scott continued to refuse to report his hours as talent fees.

47.     Scott repeatedly requested that Defendant reassign him to a position that would not misclassify him as a contractor and would not separate talent fees from hours worked that counted toward overtime and benefits.

48.     Scott was told, however, if he did not accept his status as a contractor, his pay would be reduced 25 percent.

49.     Scott's classification was changed to avoid paying him for hours worked that would count toward his eligibility for health insurance, and to avoid paying him overtime in the event he worked more than 40 hours in a pay period.

50.     The television news station misclassified Scott to make him ineligible for overtime as well as for health care benefits.

51.     Scott filed a complaint with the corporate ethics department of WFTV, and later with the U.S. Department of Labor ("DOL") in February of 2017.

52.     The DOL conducted an investigation and found in July of 2017 that Scott was misclassified as a part-time employee and was denied overtime as required by the Fair Labor Standards Act.

53.     As a direct result of Scott's wage complaints, WFTV reduced his hours even further and demoted him.

54.     Scott raised the issue again on September 22, 2017 to Mary Robert, Group VP Human Resources, who told him falsely that he had "always" been classified "as a part-time employee."

55.     However, as late as September 28, 2016, Payroll Specialist Terry Sharpe informed Scott that he was considered a "full-time employee with no restrictions."

56.     In October of 2017, Scott was told that his benefits would not be renewed because he lacked the working hours to be eligible as a full-time employee. He was told he did not work enough hours (1,560) the year prior (October 3, 2016 to October 2, 2017) to qualify for the Cox Medical [Insurance] Plan.

57.     Scott's merit-based raise was reduced 50 percent on March 26, 2017 following his wage and benefits complaints.

58.     The retaliation culminated when WFTV followed through with its threat and denied Scott his benefits on January 1, 2018.

59.     As a result of the unlawful actions by Defendant, Scott was denied benefits, including health care benefits, lost income, and was forced to incur attorney's fees to vindicate his rights.

## COUNT I
### Denial of Benefits
### ERISA, 29 U.S.C. § 1140

60.     Plaintiff re-alleges and incorporates by reference into Count I paragraphs 1 through 59 of this Complaint.

61.     Defendant sponsored an employee benefit plan for its employees that covered Scott during his employment with Defendant.

62.     The plan was Cox Enterprises, Inc. Welfare Benefit Plan that was issued pursuant to the requirements of ERISA.

63.     The plan was provided by Defendant to provide employee benefits, including but not limited to medical and dental coverage and life insurance.

64.     Scott, who was a beneficiary under the plan, is bringing this action to recover benefits that are due him under the terms of the plan and to clarify his rights for future benefits he is entitled to receive under the plan.

65.     Scott is also seeking to enjoin any similar violations from occurring in the future and to redress the violations that have occurred in the past and which are continuing to occur.

66.     Employers are prohibited from intentionally taking actions that might abridge or impair an employee's ability to collect ERISA benefits.

67.     The ACA requires employers with 50 or more full-time employees to provide health care to all full-time employees.

68.     Full-time employees under the ACA are employees who work 30 or more hours per week.

69.     WFTV intentionally reduced Scott's hours to less than 30 per week to make him ineligible for health care benefits and to deny him health care benefits.

70.     WFTV intentionally and deliberately misclassified Scott in order to deny him wages and health insurance benefits.

71.     After reducing his hours, WFTV took away Scott's benefits, including health insurance, in January of 2018.

72.     ERISA makes it "unlawful for any person" to discriminate against a participant or beneficiary for exercising any right provided by ERISA or for the purpose of interfering with the attainment of any right the participant may be entitled to under the employer's benefit plan.

73.     Defendant intentionally curtailed Scott's hours to discriminate against him "for the purpose of interfering with the attainment" of his right to employee benefits.

74.     Defendant was concerned about the cost of providing health care coverage, and attempted to decrease costs by reducing employees' hours so they would no longer be eligible for employee benefits, and by classifying employee hours as contracted work which was not counted toward eligibility for health care benefits.

75.     Thus, Defendant acted with an unlawful purpose when it took adverse actions affecting Scott's work status.

76.     Defendant specifically intended to interfere with Scott's benefits when it reduced his hours and directed him to report certain hours as "talent fees" instead of hours worked.

77.     Defendant demoted Scott for the purpose of depriving him of continued participation in the company-provided group health care plan.

78.     As a result of Defendant's actions, Scott has lost wages, including overtime, that he would have earned if he had not been demoted unlawfully to avoid the requirements of the ACA.

79.     Plaintiff also has been forced to pay the cost of health care and other benefits out of his own pocket as a result of the loss of medical, dental and other benefits coverage.

**DEMAND FOR RELIEF**

WHEREFORE, Scott respectfully asks this Court to award him damages for the following:

(i)     lost wages that resulted from his demotion intended to deny him health care benefits;

(ii)    the cost of obtaining the entitled benefits out-of pocket;

(iii)   lost overtime that resulted from the demotion;

(iv)    reinstatement to a full-time position;

(v)     reinstatement of all employee benefits;

(vi)    interest; and

(vii)   any other relief the Court deems proper.

**COUNT II**
**Retaliation**
**ERISA, 29 U.S.C. § 1140**

80.     Plaintiff re-alleges and incorporates by reference into Count II all allegations made in paragraphs 1 through 79 of this Complaint.

81.     ERISA prohibits employers from discriminating against employee beneficiaries to its health care plan for exercising or attempting to exercise their rights under ERISA.

82.     Plaintiff was a beneficiary of Defendant's ERISA benefits plan, and therefore, is protected against retaliation for exercising his rights in regard to ERISA employment benefits.

83.     Plaintiff engaged in protected activity under ERISA in that he attempted to exercise his rights to employment benefits which he was entitled to receive.

84.     As a result of engaging in protected activity, Scott suffered an adverse employment action in the form of a demotion or loss of pay.

85.     Plaintiff also suffered an adverse employment action in that he was discriminated against for exercising his rights under ERISA. The purpose of the discriminatory acts was to retaliate against Plaintiff for the exercise of his rights under ERISA and to interfere with the attainment of such rights.

86.     The adverse employment action was directly connected to the protected activity, i.e., Plaintiff's attempt to exercise his rights under ERISA.

87.     Defendant engaged in improper efforts to interfere with Plaintiff's ERISA benefits, and Defendant did in fact actually interfere with Plaintiff's receipt of such benefits.

88.     As a result of the unlawful actions by Defendant, Scott suffered a loss of benefits and a loss of income that resulted from the retaliatory acts by Defendant.

89.     Scott also was forced to incur attorney's fees to vindicate his rights and to pay the cost of his employee benefits out of his own funds.

## **DEMAND FOR RELIEF**

WHEREFORE, Scott respectfully asks this Court to award him damages for the following:

(i)     lost wages that resulted from the discrimination that occurred from the denial of health care benefits which Scott was entitled to receive;

(ii)    the cost of obtaining the benefits out of pocket;

11

(iii)    lost overtime that resulted from the reduction in hours intended to deny Scott employment benefits;

(iv)    reinstatement to a full-time position;

(v)    reinstatement of all employment benefits;

(vi)     interest; and

(vii)    any other relief the Court deems proper.

**COUNT III**
**Retaliation**
**Fair Labor Standards Act, 29 U.S.C. § 215**

90.    Plaintiff re-alleges and incorporates by reference into Count II all allegations made in paragraphs 1 through 59 of this Complaint.

91.    The FLSA makes it unlawful to discriminate against any employee for filing a claim seeking unpaid wages. The protection applies whether or not the employee's work was covered by the FLSA.

92.    The FLSA makes it unlawful to demote an employee or reduce his compensation for filing a claim for unpaid wages under the FLSA.

93.    Scott filed a complaint with the Department of Labor on February 3, 2017.

94.    The DOL conducted an investigation and found in July of 2017 that Scott was classified as a part-time employee and was denied overtime as required by the FLSA.

95.    As a direct result of Scott's complaints, WFTV reduced his hours even more and continued to make him work in a part-time capacity as a result of his demotion.

96.    The result of the reduction in hours was that on October 1, 2017, Scott was told he was no longer eligible to enroll in Defendant's health care plan.

97.     WFTV retaliated against Scott for filing a wage claim for unpaid overtime by continuing to reduce his hours and by denying him benefits.

98.     Plaintiff is entitled to liquidated damages under the FLSA because the violation by WFTV was willful.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully asks the Court to award the following damages:

(i)      lost wages as a result of the retaliatory demotion;

(ii)     liquidated damages;

(iii)    emotional and mental distress;

(iv)    interest; and

(v)     any other relief this Court deems appropriate.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for each and every allegation in this Complaint.


Respectfully submitted,


**[s] Alfred Truesdell**
Alfred Truesdell
Florida Bar No. 0885363
Truesdell Law
3521 Tyngsbourgh Drive
DeLand, Florida 32720
(407) 920-7392
truesdelllaw@gmail.com
Attorney for Bryan Scott